IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| THOMAS SAMES, M. D., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:17-CV-162-D-BR |
| | § | |
| AMARILLO II ENTERPRISES, LLC, et al., | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
TO GRANT DEFENDANT'S MOTION TO COMPEL ARBITRATION
AND TO GRANT MOTION TO STAY PROCEEDINGS**

On December 18, 2017, defendants Amarillo II Enterprises, LLC d/b/a/ Amarillo Center for Skilled Care ("Amarillo II"), Creative Solutions in Healthcare, Inc. ("Creative Solutions"), and Todd Gudgell ("Gudgell") filed their Motion to Compel Arbitration and Motion to Dismiss or, Alternatively, to Stay Proceedings and Brief in Support, along with an Appendix. [ECF 10, 11].  Plaintiff Thomas Sames, M.D., ("Sames") filed his response and defendants filed their reply. In accordance with 28 U.S.C. § 636(b)(1), the United States District Court Judge referred the motion to the undersigned United States Magistrate Judge for a hearing, if necessary, and for recommendation.  [ECF 31]. For the following reasons, the Court recommends defendants' motion to compel be GRANTED, and this action be STAYED pending arbitration.

I.
PROCEDURAL BACKGROUND

On September 1, 2016, Sames filed a petition under Texas Rule of Civil Procedure 202 ("Rule 202 Petition") in the 181st Judicial District Court of Potter County, Texas, to investigate

potential claims against certain parties, including the defendants sued herein. *See* Tex. R. Civ. P. 202.1 (West 2016). [ECF 11 at 27-35].[1] On October 10, 2016, defendants filed their answer and a motion to stay the state court proceeding pending resolution of an arbitration agreement between the parties. Ultimately, on December 20, 2016, the state district court judge granted Sames's (second amended) Rule 202 petition but, finding the court to be without jurisdiction over defendants' motion to stay and to compel arbitration, denied the motion to stay. [ECF 11 at 104-106].

Defendants sought relief by filing a writ of mandamus with the Seventh Court of Appeals of Texas; on February 3, 2017, that court conditionally granted the writ.  [ECF 11 at 108-116].[2] The appellate court ordered the state district court judge to: (1.) vacate his December 20, 2016 order granting plaintiff Rule 202 relief; and to (2.) "determine whether the parties executed an enforceable arbitration clause encompassing the issues to be asserted in the anticipated suit of Sames as explained in his live Rule 202 pleading." [ECF 11 at 114]. On February 27, 2017, the state district court judge entered an order [ECF 11 at 116] granting defendants' February 24, 2017 Amended Motion to Stay Pending Resolution of Binding Arbitration ("motion to stay") [ECF 11 at 50-69].

Plaintiff filed his federal complaint on August 29, 2017 [ECF 1], and then amended his complaint on November 21, 2017 [ECF 5]. Defendants filed this motion to compel arbitration and stay or dismiss the case on December 18, 2017 [ECF 10].

---

[1] Plaintiff subsequently filed his Second Amended Verified Petition to Investigate a Potential Claim or Suit on October 19, 2016. [ECF 11 at 38-48].

[2] Defendants also filed an interlocutory appeal of the state district court decision in the Seventh Court of Appeals of Amarillo, but the appellate court dismissed that case as moot on April 5, 2017, after granting the writ.

II.
FACTUAL BACKGROUND

According to defendants, Amarillo II operates Amarillo Center for Skilled Care (the

"Facility"). [ECF 10 at 6, ECF 11 at 70]. Creative Solutions is an entity with common ownership

in Amarillo II and provides administrative services to multiple nursing homes, including the

Facility. *Id.* Amarillo II employs Gudgell as the Facility Administrator. *Id.* Amarillo II and

plaintiff, individually, were parties to a Medical Director Agreement (the "Contract") beginning

June 3, 2013, whereby plaintiff acted as Amarillo II's Medical Director on a part-time,

independent basis, but never as an employee. [ECF 10 at 5-6; ECF 11 at 11-20].

The initial term of the Contract was one year from its effective date, subject to renewal

for additional one-year terms upon mutual written agreement by the parties. [ECF 10 at 9; 11 at

13]. If the parties continued to abide by its terms after the expiration of either the initial one-year

term or any renewal terms, the Contract could then continue on a month-to-month basis. After

the initial expiration of the Contract on June 3, 2014, the parties did not renew the Contract but

continued month-to-month, according to Defendants. [ECF 10 at 9]. Plaintiff Sames vigorously

denies this was the case. [ECF 21 at 15].

Additionally, the Contract contained a provision providing that:

**ARBITRATION**; Any dispute or controversy arising under, out of or in connection with,
or in relation to this Agreement, or any amendment hereof, or the breach hereof shall be
determined and settled by arbitration in accordance with the rules of the American
Arbitration Association and apply the laws of the **State of Texas**. Any award rendered by
the arbitrator shall be final and binding upon each of the parties, and judgment thereof may
be entered in any court having jurisdiction thereof….

[ECF 10 at 9; 11 at 16]. Plaintiff sold his medical practice to NWTX AMG Physician Network

("NWTX") and in so doing, assigned the Contract to NWTX (with Amarillo II's consent on

August 1, 2014). [ECF 10 at 5, 9-10. Plaintiff then became an employee of NWTX, but continued to act as the Facility's Medical Director for Amarillo II pursuant to the Contract.

According to plaintiff, beginning sometime in mid-2015 he became the target of unwanted flirting and communications involving sexual innuendos from a nurse employed by Amarillo II. [ECF 21 at 6-7]. This conduct escalated to derogatory comments and physical violence against plaintiff's girlfriend, another nurse employed by Amarillo II, who is now plaintiff's wife. According to plaintiff, both he and his girlfriend filed complaints about this unwanted behavior with Gudgell on May 25, 2016. *Id*. at 7. Having no resolution of his complaint, plaintiff alleges that on May 31, 2016 he contacted Gudgell who stated he was "still thinking about it;" plaintiff also lodged his complaint that same day with Amarillo II and Creative Solutions. *Id*. There is some dispute between the parties regarding the scope of the investigation surrounding plaintiff's complaint [ECF 21 at 7-8, ECF 10 at 10], but plaintiff concedes a "Ms. Johnson" told him on June 17, 2016 that the matter had been handled and the nurse had been admonished to not repeat her improper behavior. [ECF 21 at 8].

Plaintiff avers he was on vacation from June 27 through July 5, 2016 and also from July 18 through July 22, 2016, and that on or about July 21, 2016 he received a certified letter dated July 13, 2016 indicating Amarillo II was terminating the Contract between it and NWTX. *Id*. Defendants argue plaintiff stopped attending Facility meetings approximately June 1, 2016, that the Facility Administrator, Gudgell, did not see plaintiff after that date, and that on July 5, 2016, Gudgell received a letter from plaintiff's employer, NWTX, that he was not to contact plaintiff except regarding clinical issues. [ECF 10 at 10]. Defendants argue it was these factors, and the importance of having free communication between Gudgell, as the Facility Administrator, and plaintiff, as the Facility Medical Director, that led to plaintiff's termination under the terms of

the Contract. *Id*.

## III.
## ISSUES

The following issues are before the Court:

1. Does Collateral Estoppel Bar Plaintiff From Relitigating the Issue of Arbitrability?
2. Does a Valid Agreement to Arbitrate Exist between the Parties?
3. Does the Dispute in Question Fall within the Scope of the Arbitration Agreement?
4. Do Any External Legal Constraints Foreclose Arbitration?

## IV.
## DISCUSSION

A.      Collateral Estoppel

Under both federal and Texas law, collateral estoppel applies "when (1) the issue of fact

or law sought to be litigated in the second action was fully and fairly litigated in the first action;

(2) that issue of fact or law was essential to the judgment in the first action; and (3) the party

against whom the doctrine is asserted was a party or was in privity with a party in the first

action." *See City of San Antonio v. Cortes*, 468 S.W.3d 580, 586 (Tex.App.—San Antonio 2015,

pet. denied) (citing *Taylor v. Surgell*, 553 U.S. 880, 892 (2008)); *Sysco Food Servs., Inc. v.*

*Trapnell*, 890 S.W.2d 796, 801-02 (Tex. 1994); *see also John G. & Marie Stella Kenedy Mem'l*

*Found. v. Dewhurst*, 90 S.W.3d 268, 288 (Tex. 2002) (explaining elements of collateral estoppel

under federal and Texas law are the same)).

Here, Amarillo II seeks to dismiss the pending suit, or in the alternative, stay proceedings

during binding arbitration. Because the motion to compel arbitration is but one issue in the

pending litigation, and also because Amarillo II seeks to preclude relitigation of only the

arbitration issue that they contend was actually litigated, this case falls under the "collateral

estoppel" definition; res judicata has not been asserted. *See Johnson v. United States*, 576 F.2d

606, 611 (5th Cir. 1978) ("Collateral estoppel ... precludes relitigation only of those issues actually litigated in the original action, whether or not the second suit is based on the same cause of action."). Both parties acknowledge that no prior court has issued a final judgment on the merits of the claims asserted in the complaint; rather, Amarillo II asserts that the issue of arbitrability of these claims has been decided. Thus, a stay, and not dismissal, is appropriate here.

      1.   Was the issue actually, fully, and fairly litigated in the first action?

          a.   What constitutes "litigation?"

An issue has been litigated if it was raised by pleadings or submitted for determination and was actually determined by the fact finder. *See Tenet Health Sys. Hosp. Dallas, Inc. v. North Tex. Hosp. Physicians Group, P.A.*, 438 S.W.3d 190, 203 (Tex.App.—Dallas 2014, no pet.). Sames argues that a Rule 202 proceeding is not removable to federal court as a lawsuit and is not subject to specific relief being granted; thus, such a proceeding fails to constitute "litigation." [ECF 21 at 6]. A Rule 202 proceeding requires a petitioner to file his Rule 202 petition for pre-litigation in a "proper court," i.e., one that has personal and subject matter jurisdiction of the parties in the ancillary suit. *In re John Doe a/k/a "Trooper,"* 444 S.W.3d 603, 608 (Tex. 2014). Additionally, a Rule 202 proceeding is filed in *anticipation* of an actual lawsuit and defendants to the anticipated suit may make appearances and *litigate* issues like jurisdiction at the Rule 202 proceeding. *Id*. Although the typical Rule 202 proceeding would not result in an order other than a grant or denial of the 202 petition to secure depositions or evidence, certain orders regarding jurisdiction or arbitrability could (and do, obviously) issue from such proceedings. In such an event, the Court must determine if the *same parties* had the opportunity to present evidence, arguments, and motions in favor or against a specific outcome of an issue.

      It is counterintuitive to the Court to define "litigation" solely as a civil lawsuit for

purposes of collateral estoppel. Certainly, clients will accrue "litigation" costs for the filing of

pre-trial Rule 202 proceedings to *pursue* a lawsuit. In this particular case, the Rule 202

proceeding additionally proceeded to both appeal and to mandamus at the Seventh Court of

Appeals of Amarillo, where motions, briefs and evidence were filed and arguments were made

by all parties, including Sames. The opportunity to present evidence and arguments constitutes

the opportunity to litigate ones claims. When a state court judge is acting in his judicial capacity

to resolve a dispute, and the parties are presenting arguments concerning that dispute, this

constitutes submitting an issue for "determination" by the state court judge, even if a final

judgment on the merits of the overall claim will not enter. *See Tenet*, 438 S.W. 3d at 203.

> b. How does the mandamus ruling affect the preclusion principle concerning a Rule 202 proceeding?

A Rule 202 proceeding determination is reviewable by an appellate court through the

process of mandamus. *In re Wolfe*, 341 S.W.3d 932, 933 (Tex. 2011). A Rule 202 proceeding is

in fact "tethered" to the anticipated suit by the very nature of the proceeding. *In re City of Dallas*,

501 S.W.3d 71, 74 n.2 (Tex. 2016). In reviewing a state court judge during a mandamus, the

appellate court must limit the Rule 202 proceeding to what the plaintiff/petitioner would be able

to obtain in the anticipated action and deny the plaintiff that which would be denied in the

anticipated action. *Wolfe*, 341 S.W.3d at 933. The Seventh Court of Appeals of Amarillo

reasoned, "if the trial court is barred from adjudicating the anticipated suit, it cannot permit pre-

suit discovery on claims underlying that suit." [ECF 11 at 112]. By so ruling, the appellate court

required the state district judge to determine if the arbitration provision of the Contract applied to

the specific claims *anticipated* by the Rule 202 petition. When the state district judge found that

the arbitration clause precluded the Rule 202 proceeding discovery on the facts listed therein

(which are identical to the facts in the Amended Complaint as discussed below), that finding was the result of actual litigation, reviewed on appeal.

### c.   Is a final judgment necessary for purposes of collateral estoppel?

Both federal and Texas courts have determined that a final judgment is not necessary for purposes of collateral estoppel. *See Cortes*, 468 S.W.3d at 586; *see also Rolls-Royce Corp. v. Heros, Inc.*, 576 F. Supp. 2d 765, 777 (N.D. Tex. 2008) (finding collateral estoppel differs from res judicata in that no final judgment on the merits is needed for issue preclusion). Rather, the test for finality for purposes of issue preclusion is "whether the conclusion in question is procedurally definite." *Cortes*, 468 S.W. 3d at 586 (citing *VanDyke v. Boswell, O'Toole, Davis & Pickering*, 697 S.W.2d 381, 385 (Tex. 1985) (quotations deleted). To determine this, the Court should consider "whether the parties were fully heard, [whether] the court supported its decision with a reasoned opinion [and whether] the decision was subject to appeal or was in fact reviewed on appeal." *Id*. The *Cortes* court determined that the trial court's ruling compelling arbitration and their [the state appellate court's] subsequent affirmation on interlocutory appeal met all three of these elements. *Id*. at 586-87.

This Court finds the *Cortes* opinion instructive regarding whether the issue related to the arbitration clause was "fully and fairly" litigated during the state court Rule 202 proceeding and subsequent mandamus to the Seventh Court of Appeals in Amarillo, Texas. Had Sames filed an actual lawsuit with the state court, rather than utilized the investigative tool of a Rule 202 proceeding, the ruling to pursue arbitration would still not have resulted in a final judgment in this case if the state court stayed proceedings. Although Amarillo II could have properly filed a motion to compel, rather than a motion to stay, in the state court lawsuit, either procedural vehicle would have resulted in a determination on arbitrability. Thus, the distinction between a

Rule 202 pre-suit discovery proceeding and an actual lawsuit resulting in a judgment on the merits is not determinative on the issue of claim preclusion when determining if an arbitration clause applies to a set of facts that are the subject of a claim.

2.  Is the issue in the pending suit identical to the issue raised in the first action and was that issue essential to the judgment in the first action?

Collateral estoppel "bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." *Taylor*, 553 U.S. at 892. As long as the "ultimate issue of fact" actually litigated and essential to the judgment is the same, it does not matter if the second suit is based on the same cause of action. *See Bonniwell v. Beech Aircraft Corp.*, 663 S.W.2d 816, 818 (Tex. 1984). Sames argues "no motion to compel arbitration was ever filed or considered by the state court." [ECF 21 at 5]. This argument focuses on the relief sought by Amarillo II during the Rule 202 and mandamus proceedings, a stay versus an order compelling arbitration, rather than the issue of whether the state court determined that the arbitration clause in the Contract applied to the factual claims and *anticipated* lawsuit that were the subject of the Rule 202 pre-suit proceeding. The important determination here is whether the state court considered and decided the issue of arbitrability after it was actually litigated. Before applying collateral estoppel to an issue, the Court must determine that the facts asserted in the second proceeding were fully and fairly litigated in the first. *Id*. at 818.

This Court has made an independent examination of the factual assertions made in the Rule 202 petition [ECF 14 at 17-26] and the factual assertions made in the present Amended Complaint [ECF 5].  The factual assertions made in both documents are nearly word for word identical as to all facts supporting the claims for requested relief. [*See* attached Exhibit 1 to this

Findings, Conclusions and Recommendation]. In fact, the only differences involve one additional claim of harassment by one additional actor added to the present lawsuit and a few introductory sentences added to the other previously listed factual claims. *Id*. Thus, the Court finds the lawsuit *anticipated* by the Rule 202 proceeding and that the state court determined would be subject to arbitration is factually identical to the presently filed proceeding.

Additionally, the key issue subject to collateral estoppel is whether the arbitration clause itself was raised *concerning* these factual claims. Sames's argument that "a motion to compel arbitration" was never filed is unavailing. Sames acknowledged that a Rule 202 proceeding is a procedural vehicle to investigate claims, not a determinative lawsuit. Although Sames references this point to indicate that no final judgment could issue on the merits of his claim, he does not conversely acknowledge that a stay, versus a motion to compel arbitration, was the appropriate procedural vehicle for Amarillo II because of the nature of the proceeding. All along Amarillo II has maintained that these claims will be the subject of the arbitration clause of the Contract. Sames has adamantly disagreed, both at the state court and before this Court. However, the issue of the applicability of the arbitration clause was definitely the *subject* of the trial court's orders and Defendants' state court motion to stay the Rule 202 petition. The applicability of the arbitration clause was also clearly the *issue* that was litigated in the mandamus action and ultimately decided by the state trial court when it granted the stay.

In fact, it is clear from the *reversal* of the state trial judge's decision after the mandamus issued that the arbitration clause was *the essential* issue in determining if a stay would be granted in the Rule 202 proceeding. Initially, the state court judge granted the Rule 202 petition and ordered certain depositions taken. [ECF 11 at 108-110]. It was only after the Seventh Court of Appeals of Amarillo issued the writ of mandamus ordering the trial court to consider the

applicability of the arbitration clause to the *anticipated* lawsuit that the state court judge vacated

his order granting the Rule 202 petition and granted Amarillo II a stay of proceedings. [ECF 11

at 116]. The order by the state court judge specifically reads the stay is granted "pending

resolution of binding arbitration." *Id*. The order further references the pleadings, evidence, and

arguments of counsel as part of his decision. *Id*.

    3.   <u>Was the plaintiff a party in the first action? Did plaintiff participate in litigating the issue of arbitrability?</u>

As evidenced by the identical petition in the Rule 202 proceeding to the complaint in this

proceeding, the identical party (Sames) brought these claims. Sames was the plaintiff in the Rule

202 proceeding, and Sames also filed briefs and argument before Amarillo's Seventh Court of

Appeals in the mandamus proceeding. The same counsel represented Sames in both state

proceedings and represents Sames in the present case as well. Sames had the opportunity to raise

any evidence and arguments regarding arbitration at the state trial court and at the state appellate

court during the mandamus proceeding and, prior to dismissal as moot, the appeal of the denial

of the stay to the Seventh Court of Appeals in Amarillo.

    4.   <u>Do any special circumstances exist that would render preclusion either inappropriate or unfair?</u>

Special circumstances generally involve a change in the law or legal rules that apply to

the issue in question. *See Commissioner of Internal Revenue v. Sunnen*, 333 U.S. 591 (1948).

Sames has not pointed to any recent changes in the law regarding contract principles or

arbitration provisions since the decision issued by the state trial court. Further, the Court is

unaware of any material change in the applicability of arbitration clauses since that decision.

B.     <u>The Contract and Its Terms: even if collateral estoppel did not subject plaintiff to arbitration, does a valid agreement to arbitrate exist?</u>

The decision regarding who has authority to decide whether a party has agreed to arbitrate a dispute "can make a critical difference to a party resisting arbitration." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 942 (1995). Courts employ a strong presumption in favor of arbitration of a dispute if the arbitration agreement is ambiguous. *Id*. at 944. Stays are "required if claims are referable to arbitration under an agreement in writing." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009). Traditional principles of state contract law determine whether an arbitration agreement can be enforced by or against parties and nonparties to the agreement. *See id*. at 630-31; *see also Todd v. S.S. Mut. Underwriting Ass'n (Bermuda) Ltd.*, 601 F.3d 329, 333-34 (5th Cir. 2010).

The Medical Director Contract between Sames and Amarillo II contained a one-year term beginning June 3, 2013 that was subject to renewal for additional one-year terms upon mutual written agreement. After the expiration of either the initial one-year term or any written renewal terms, the Contract could continue on a month-to-month basis.

Defendants contend the Contract's initial term ended June 3, 2014 because the parties did not renew the Contract by written agreement but that the parties continued to operate pursuant to the terms of the Contract thereafter on a month-to-month basis. [ECF 10 at 9]. Plaintiff Sames appears to concede the original one-year term concluded June 3, 2014 and that the parties did not renew the Contract. [ECF 21 at 15]. Sames then appears to argue alternatively that (1) the Contract could not be interpreted to have gone month-to-month and instead expired because he did not continue to abide its terms; and/or (2) that his assignment of the Contract to NWTX on August 1, 2014 released him from all contractual obligations. *Id.*

Sames's rationale, however, is flawed. Sames's contention that changes in his relationship with Amarillo II after the assignment to NWTX, such as his obligation to employ

and pay nurse practitioners [*See* ECF 21 at 15, fn.2], demonstrate he was no longer abiding by the Contract's terms and is further proof the Contract had expired, still does not explain the period of time between June 3, 2014 (contract's expiration) and August 1, 2014 (date of assignment). The examples of activities to which Sames refers were arguably changed no earlier than the date he assigned the medical directorship to NWTX. Moreover, Sames's argument that the Contract expired by its own terms after the initial one-year term would appear to contradict the necessity for Amarillo II's written Consent to Assignment of Medical Directorship, as mandated by the Contract's terms. [ECF 11 at 21].   It appears more likely that the parties were operating on a month-to-month basis under the terms of the Contract and that Sames continued to act as Medical Director from June 3, 2014 until he assigned the medical directorship to NWTX, sometime after August 1, 2014.

After the assignment, Sames continued to perform medical director services under the Contract for approximately two years, but as an employee of NWTX. Thereafter, by letter dated July 13, 2016 but effective August 15, 2016, Gudgell terminated the Contract pursuant to paragraph 9(a) thereof.[3]  Paragraph 9(a) reads,

Termination without Cause: Following the expiration of the Initial Term, either party may terminate this Agreement without cause by giving the other party at least thirty (30) days' prior written notice. In the event such notice is given by Facility, Facility may, in its sole discretion, at any time prior to the effective date of such termination, remove Director from his/her position hereunder, as long as Facility continues to pay Director all compensation due him/her under this Agreement until the effective date of such termination.

[ECF 11 at 15]. Specifically, the termination letter was addressed to both Sames and NWTX, referenced the Medical Director Agreement between Amarillo II Enterprises, LLC d/b/a

---

[3] The Gudgell termination letter refers to "paragraph 9(a) of the October 1, 2013 Medical Director Agreement." [ECF 11 at 22]. The Medical Director Agreement is dated October 1, 2013 [ECF 11 at 11] although the parties signed the agreement June 3, 2013 *Id*. at 19.

Amarillo Center for Skilled Care and Sames, and stated, "which Agreement was subsequently assigned by Director to NWTX AMG Physician Network, PLLC." *Id*. at 22.  Consequently, it appears the Contract remained in effect, on a month-to-month term, until its termination effective August 15, 2016.

Assuming *arguendo*, that the Contract expired in June 2014, the termination did not relieve Sames of his contractual obligation under Texas law, to arbitrate.[4] The Medical Director Agreement, paragraph 10, provides:

> **ARBITRATION.** Any dispute or controversy arising under, out of or in connection with, or in relation to this Agreement, or any amendment hereof, or the breach hereof shall be determined and settled by arbitration in accordance with the rules of the American Arbitration Association and applying the laws of the **State of Texas.** Any award rendered by the arbitrator shall be final and binding upon each of the parties, and judgment thereof may be entered in any court having jurisdiction thereof. The costs shall be borne equally by both parties. During the pendency of any such arbitration and until final judgment thereon has been entered, this Agreement shall remain in full force and effect unless otherwise terminated as provided hereunder.

[ECF 11 at 16].

    1.   <u>Does this dispute fall within the scope of the arbitration agreement?</u>

The Court finds that the arbitration clause above is distinctly broad and covers any interactions between employees of Amarillo II and Sames during the relevant time period. Additionally, the termination of Sames from his independent contractor position performing duties as the Medical Director at Amarillo II relates to actions he performed under terms of the Contract. The Contract does not contain a clause that delegates authority to the arbitrator to rule on the arbitrability of a specific claim. *See Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 202 (5th Cir. 2016). As such, the question regarding the scope of the arbitration clause is one

---

[4] The parties agree ordinary principles of Texas contract law apply to the issue of whether there is a valid agreement to arbitrate. [ECF 21 at 14; 24 at 5 fn.3]. *See J.M. Davidson, Inc., v. Webster*, 128 S.W.3d 223, 227-28 (Tex. 2003)(Arbitration agreements are interpreted under traditional contract principles).

entirely for the Court. *Id.*; *see also Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 301 (5th Cir. 2004).

Although the Court has determined that this issue is foreclosed by collateral estoppel, even if issue preclusion did not apply, the Court agrees that the claims made here are subject to the arbitration provision of the Contract. The Court must defer to arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Comm'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (citations omitted). Further, the Court agrees with Amarillo II that the Court must resolve any close calls regarding the scope of such arbitration clause "in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

Sames bears the burden to prove that the arbitration clause does not cover this dispute. *Prudential Secs., Inc. v. Marshall*, 909 S.W.2d 896, 900 (Tex. 1995). Sames argues that his claims are not for breach of contract and his claims could be sustained without reference to the Contract at all. [ECF 21 at 13]. Amarillo II counters this argument by stating that this controversy arose because Sames was terminated from performing work as a medical director at Amarillo II and no controversy would exist without termination of his employment pursuant to assignment of the Contract duties by NWTX to Sames. [ECF 10 at 18]. Amarillo II argues the Contract must be referenced in this lawsuit to show Sames is an independent contractor and establish his duties as such. [ECF 24 at 9]. Further, Amarillo II argues that the retaliation claims made by Sames reference the Contract. *Id.* The Court finds these claims are arbitrable as claims "arising under, out of or in connection with, or in relation to" the Contract. *See, e.g., Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991) (age discrimination claim arbitrable pursuant to contract requiring arbitration of controversies arising out of employment or termination of

employment); *Gillespie v. Colonial Life & Accident Ins. Co.*, No. 08-689, 2009 WL 890579, at

\*7-8 (W.D. Pa. Mar. 30, 2009) (sexual harassment and retaliation claims fell within scope of

agreement requiring arbitration of claims arising out of or related to agreement or breach thereof

because they related to treatment of the plaintiff during her business relationship with the

defendant, which was governed by the contract). The Court finds these cases instructive of the

claims asserted by plaintiff here.

2.  <u>Do any external legal constraints foreclose arbitration?</u>

Having determined that Sames and Amarillo II entered into a valid arbitration agreement

and that agreement covers the dispute in question, the Court now addresses whether there are any

external legal constraints that would nonetheless preclude arbitration. *See Webb v. Investacorp,

Inc.*, 89 F.3d 252, 257-58 (5th Cir. 1996) (per curiam). "The party resisting arbitration must

demonstrate that Congress clearly intended to preclude the parties from waiving their judicial

remedies or that another ground exists at law or equity (such as fraud or coercion) which permits

the parties' contract or agreement to be revoked." *Perez v. Lemarroy*, 592 F.Supp.2d 924, 936

(S.D. Tex. 2008) (citing *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 92 (2000)).

Notably, the parties have not argued that the arbitration clause itself is invalid. Further,

Sames has not argued that Congress intended to limit the parties from submitting to binding

arbitration regarding these type of disputes. With the strong presumption in favor of arbitration,

the Court concludes that there are no legal constraints foreclosing arbitration.

V.
RECOMMENDATION

For the reasons set forth above, it is the RECOMMENDATION of the Magistrate Judge

to the District Judge that the "Motion to Compel Arbitration and Motion to Stay" filed by

defendants Amarillo II be GRANTED. It is further the RECOMMENDATION of the Magistrate

Judge that this case be abated until the parties have fulfilled their obligations under the

arbitration clause of the contract.


## VI.
## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Findings, Conclusions and

Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED on July 2, 2018.

_____
LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

## *NOTICE OF RIGHT TO OBJECT*

Any party may object to these proposed findings, conclusions and recommendation. In the event
parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen
(14) days from the date of filing as indicated by the "entered" date directly above the signature
line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic
means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth
(14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C.
§ 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings,
Conclusions and Recommendation."  Objecting parties shall file the written objections with the
United States District Clerk and serve a copy of such objections on all other parties. A party's
failure to timely file written objections to the proposed findings, conclusions, and recommendation
contained in this report shall bar an aggrieved party, except upon grounds of plain error, from
attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and
recommendation set forth by the Magistrate Judge in this report and accepted by the district court.
*See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v.
Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).

Case 2:17-cv-00162-Z-BR    Document 43    Filed 07/02/18    Page 18 of 18    PageID 474

Page 18 of 18